**AGRICULTURAL CHEMICAL COMPA-NY, an Illinois Corporation, Appellant,**

v.

**DOW CHEMICAL COMPANY, a Michigan Corporation, Appellee.**

**No. 13827.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1960.

Henry Gifford Hardy, San Francisco, Cal. (Donald K. Tyler, Detroit, Mich., on the brief), for appellant.

Arthur W. Dickey, Detroit, Mich. (Harness, Dickey & Pierce, Detroit, Mich., on the brief), for appellee.

Before SHACKELFORD MILLER, Jr., and WEICK, Circuit Judges, and WILLIAM E. MILLER, District Judge.

WEICK, Circuit Judge.

The action below was for specific performance of a contract. At the conclusion of appellant's evidence, the District Court granted appellee's motion to dismiss the complaint.

The heart of the case lies in the construction to be given Clause 6 of the contract in suit. That provision read:

"On any United States patent issued to Dow out of a patent application filed subsequent to the date hereof and based upon the work provided for in the present agreement, Dow will grant to Chemical Company [appellant] or its successors a non-exclusive, non-transferable, royalty-free license."

The narrow issue in this suit is whether a patent subsequently issued to Dow covering certain esters of 2,4,5–Trichlorophenoxyacetic acid (hereinafter referred to as 2,4,5–T) was "based upon" work done by appellant.

The work provided for in the agreement was the application by appellant of herbicidal formulations, supplied by Dow, to scrub growth in the Bartlesville, Oklahoma area. The purpose was to test the relative herbicidal effectiveness of the various compositions. The actual applications were carried out by the method of airplane spraying in June and July of 1949.

The compositions of the formulations supplied appellant were unknown to it at the time the testing program was carried out. There were fourteen in number, and each was classified by a code number given it by Dow.

Following the test applications, representatives of Dow came to Bartlesville and observed the effects of the various formulations on the vegetation growth. On October 13, 1949 Lawrence Southwick of Dow wrote Robert Himel of Agricultural Chemical relating the impressions gained by the observations. In that letter, for the first time, it was disclosed that chemical esters of 2,4,5–T, 2,4–Dichlorophenoxyacetic acid (hereinafter referred to as 2,4–D), and 2,4,5–T in combination with 2,4–D were used in the tests. Southwick stated that the tests indicated 2,4,5–T to be superior in controlling scrub growth, but that it was at that time impossible to fully evaluate the test results and that the true results would not be known until the spring or early summer of 1950. His letter also indicated that Dow had been engaged in the testing of 2,4,5–T in 1948 and had other independent testers doing similar work. Dow never made any further observations of the test areas treated by appellant, other than the one referred to in Southwick's letter.

On May 22, 1950 application for a patent on certain esters of 2,4,5–T was made by Edgar C. Britton and Louis E. Begin, employees of Dow. The claims were initially rejected by the Patent Office as lacking in invention over two prior patents. The burden then fell on applicants to establish a difference in kind, rather than degree, with the prior art. Affidavits of Charles E. Fisher, Superintendent of the Texas Agricultural Experiment Station at Spur, Texas were presented to the Patent Office. Mr. Fisher recited his work in testing the new 2,4,5–T compounds and its proven superiority to 2,4–D in controlling vegetation growth. Thereafter, U. S. Patent No. 2,562,855 was issued to Dow as the assignee of Britton and Begin. It is for that patent appellant claims it is entitled to be granted a license under the contract in suit. It was not claimed by

appellant that it discovered or invented the patented chemicals.

The comparative testing of 2,4,5–T and 2,4–D described in Fisher's affidavits was substantially parallel to that of appellant, and the conclusions reached were the same as those stated in Southwick's letter of October 13, 1949. It is true that the formulations supplied Fisher differed from those supplied appellant in the solvent used and the presence of certain inert ingredients in Fisher's formulations. However, it is only the acidic esters that have any effect on control of vegetation growth, and it was only on the esters of 2,4,5–T that the patent was granted. In so far as the esters were concerned, those on which the patent was granted were tested by both Fisher and appellant.

▮ Appellant first argues that as the results of its tests were known to Dow the patent should be considered as having been obtained based on the work done under the agreement. However, as appellant conceded in the District Court, the results of the work were not used in the prosecution of the patent application.

The evidence relating to the making of the contract failed to show any understanding between the parties that the mere testing of the formulations was to give appellant a right to a license under the patent.

At the time the patent application was filed, appellant was only one of several testing agencies utilized by Dow to aid in a determination of the effectiveness of 2,4,5–T. It is difficult to accept the view that the patent was issued "based upon" appellant's work, when that work was only a part of the sum total of the information gathered by Dow, especially where it is stated that testing had been going on in the year prior to the making of the contract.

Appellant further asserts that a confidential relationship existed between it and Dow or one of joint venture. There was no affirmative evidence to support this contention. By Clause 8 of the contract the parties agreed that appellant's status was that of an independent contractor. That alone should be enough to dispel any notion that the parties were acting in any confidential capacity.

Appellant's final claim is that it is entitled to equitable relief, by specific performance, because Dow used Fisher's affidavits in the Patent Office. The theory proceeds thusly: that Fisher's affidavits were the moving force in having the patent granted; that the patent was therefore based upon the work done by Fisher; that the work done by Fisher was the same as that done by appellant; that the patent was, therefore, based upon work done by appellant under the agreement; that Fisher's affidavits were used by Dow in order that it might avoid the granting of a license to appellant; that equity should not countenance such a course of action, being an evasion of a legal obligation.

The hole in this line of reasoning lies in the assumption that any legal obligation has been violated. Assuming, for the sake of argument, that the patent was granted based upon Fisher's affidavits, had Dow obtained and used affidavits of appellant, then perhaps Dow might have a legal obligation to grant appellant a license. But Dow had no legal obligation to take affidavits from appellant to use for that purpose. Nowhere in the contract does it state that Dow would call on appellant to supply any affidavits or to assist in any way in the obtaining of a patent. Nowhere in the contract does it state that appellant was to be the only one testing the new compounds. It was admitted that appellant did not attempt to ascertain if others were similarly engaged by Dow, and the evidence failed to disclose any assurance given appellant that it would be called upon if help was needed in the prosecution of any patent. Under those circumstances Dow was free to rely on any of its several testers to supply the necessary affidavits. The fact that the conclusions of the one called upon were confirmed by the work of another, or others, does not establish the

patent as being based upon the work of the others. Merely because it was to the advantage of Dow to use the affidavit of someone other than appellant does not constitute a breach of a legal obligation. Even if a moral obligation existed, this would not be sufficient to justify the granting of specific performance. A legal obligation as distinguished from a moral one must be established.

In any event, the burden of proof was upon appellant to prove that the patent was based upon work provided for in the agreement. In this respect there was a failure of proof and the District Court was justified in dismissing the complaint.

No error being found in the Findings of Fact and Conclusions of Law of District Judge Thornton, the judgment is affirmed.